UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLADYS C. SALAS,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-04574-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 9, 30 |

Before the Court are Defendants' motions to dismiss. Dkt. Nos. 9, 30. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court **GRANTS IN PART** and **DENIES IN PART** Defendant United Airline's motion, Dkt. No. 9, and **GRANTS** the motion brought by Defendants Scott Prickett and Juliana Petani, Dkt. No. 30.

## I.   BACKGROUND

This is an employment discrimination case brought by Plaintiff Gladys C. Salas against United Airlines and two supervisors. *See* Dkt. No. 1-2 ("Compl."). Plaintiff alleges that after working as a United flight attendant for twenty-eight years, she was terminated for pretextual reasons after contracting COVID-19 and struggling to recover. *Id.* ¶¶ 20, 23, 36. Plaintiff's employment was covered by a collective bargaining agreement. *Id.* ¶ 21.

Plaintiff alleges that on October 29, 2020, she informed a United representative that she had tested positive for COVID-19. *Id.* ¶ 24. A representative named Joanne called Plaintiff back twice to ask about her symptoms and request a copy of her positive test. *Id.* ¶¶ 25–26. Plaintiff also received an email from United explaining that she would need a negative test or doctor's release by November 9 to return to work. *Id.* ¶ 27.

According to Plaintiff, she saw her doctor on November 9 to get the required documents. *Id.* ¶ 28. At that appointment, her doctor said she was no longer contagious, but "there were concerns about [her] viral related symptoms which continued and included extreme fatigue, shortness of breath, cough, and difficulty with concentration." *Id.* ¶ 29. The doctor "expressed safety concerns in Plaintiff returning to work, stating that in an emergency Plaintiff's continued 'brain fog' could interfere with her ability to carry out her duties to protect passengers." *Id.* ¶ 30. The doctor sent a fax to United explaining Plaintiff's status and stating she should not return to work until December 1. *Id.* ¶ 29.

Soon after, Plaintiff received a call from supervisor Petani "demanding to know Plaintiff Salas's condition and restrictions." *Id.* ¶ 30. Petani "suggested that Plaintiff was overstating her restrictions" and used an "accusatory tone implying that if Plaintiff wanted to return to work she could." *Id.* Plaintiff "understood Petani to be suggesting that Plaintiff was using her COVID illness as an excuse not to return to work." *Id.* On November 12, representative Joanne confirmed United was releasing Plaintiff for sick leave until December 1. *Id.* ¶ 31. But that same day, Plaintiff received flight assignments and had to remind United she was on sick leave and still under quarantine. *Id.* ¶ 32. On November 18, Plaintiff received another call from Petani "wanting to know how Plaintiff Salas was feeling" and telling her she "should return to work." *Id.* ¶¶ 33–34. Plaintiff said she "felt better but not well" and that she was "waiting to be released from quarantine." *Id.* Plaintiff was released from quarantine later that day, but did not return to work because she "continued to suffer symptoms," including brain fog. *Id.* ¶ 35.

On November 20, Plaintiff flew to Florida using her employee benefits. *Id.* Plaintiff states that she believed the warmer weather would help her recover "from her lingering illness and related neurologic deficit," which manifested as fogginess, confusion, and an inability to concentrate. *Id.* ¶¶ 35–37. When she returned, United terminated her on the grounds that she had abused company benefits. *Id.* ¶¶ 36, 39. Plaintiff alleges that United's reason was pretextual, and that United actually fired her because of "her continued illness, need for additional time off to recover from the COVID-19 illness, predisposition to repeated COVID-19 infection due to her age, and United's perception of Plaintiff's predisposition because of her age." *Id.* ¶ 38.

Plaintiff brings several causes of action against Defendant United under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12920 *et seq.*, including discrimination and harassment based on disability, age, and gender; retaliation; failure to engage in the interactive process, provide reasonable accommodation, or investigate and address violations; as well as wrongful termination, defamation, and violation of California Business and Professions Code § 17200. Compl. ¶¶ 45–113. Plaintiff brings causes of action for harassment and defamation against Petani and Prickett. *Id.* ¶¶ 56–67, 98–107.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

3

## III. DISCUSSION

Defendants move to dismiss all of Plaintiff's claims. *See generally* Dkt. Nos. 9, 30. The Court finds that Plaintiff's disability-based discrimination claims—as well as any derivative claims—are adequately alleged, but dismisses Plaintiff's remaining claims with leave to amend.

### A. FEHA Claims

#### i. Discrimination

FEHA makes it unlawful for an employer to discriminate against any person "in terms, conditions, or privileges of employment" because of age, gender, or disability, among other protected categories. *See* Cal. Gov't Code § 12940(a). To establish a prima facie case of discrimination under FEHA, Plaintiff must generally show that (1) she was a member of a protected class, (2) she was performing competently in her position, (3) she suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive.[1] *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). Although this prima facie case is an evidentiary standard, not a pleading requirement, *see Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136 (9th Cir. 2019), courts routinely look to these elements to decide whether a plaintiff has stated a plausible claim at the motion to dismiss stage, *see, e.g.*, *Lindsey v. Claremont Middle Sch.*, No. C 12-02639 LB, 2012 WL 5988548, at *2 n.3 (N.D. Cal. Nov. 29, 2012).

As an initial matter, there is no dispute that Plaintiff suffered an adverse employment action when she was terminated, and the Court finds that Plaintiff has sufficiently alleged she was performing competently in her position. Contrary to United's contention, *see* Dkt. No. 9 at 18, Plaintiff's allegation that she worked as a flight attendant for twenty-eight years "with no performance or attendance infractions" is enough at this stage. *See* Compl. ¶ 20; *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 798 (N.D. Cal. 2015) (finding allegation that plaintiff was "in good standing" was enough to infer he was capable of performing his job duties).

---

[1] This "prima facie case" is part of the *McDonnell Douglas* burden-shifting framework that courts use in analyzing disparate treatment claims under FEHA. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017).

4

### a. Age & Gender

The Court finds that although Plaintiff has pled that she is part of a protected group (a woman over forty), *see* Compl. ¶ 18, she has not plausibly alleged circumstances suggesting discriminatory motive based on her gender or age.

The allegations related to age are conclusory, while the allegations related to gender are practically non-existent. Plaintiff alleges only that United's "intolerance for employees with the COVID-19 illness turns to intentional outright unbridled animus when the employee is female and/or older." *Id.* ¶ 17. Regarding age, Plaintiff adds that United "viewed her as more susceptible, because of her age, to lengthy recoveries and/or repeated infections resulting in symptoms, as compared to younger employees." *Id.* ¶¶ 36, 39. Despite asserting that United's animus is "well-known," Plaintiff offers no *facts* to support these statements, such as comments, instances where younger and/or male employees who contracted COVID-19 were treated more leniently, a pattern of disfavoring others in her protected group, or any other substantive allegation that might raise a plausible inference of discriminatory motive. *See Galarpe v. United Airlines, Inc.*, No. 17-CV-06514-EMC, 2018 WL 1586202, at *3 (N.D. Cal. Apr. 2, 2018) (finding plaintiff failed to allege facts supporting an inference of discriminatory animus); *cf. Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 906 (E.D. Cal. 2017) (finding that sexual and racial comments and an instance where a male employee was permitted a shift transfer while plaintiff was denied one were sufficient to plead discriminatory animus).

Thus, to the extent Plaintiff's FEHA discrimination claims are based on gender and/or age, they are **DISMISSED** with leave to amend.

### b. Disability

United argues that Plaintiff fails to allege that she has a disability as defined by FEHA and that, like her age and gender-based claims, she has not established discriminatory animus based on disability. *See* Dkt. No. 9 at 16–18.

#### 1. FEHA Definition of "Disability"

FEHA defines "physical disability" as a condition that affects one or more bodily systems and limits a major life activity, including working, by making it "difficult." Cal. Gov't Code

5

§ 12926(m)(1). California regulations exclude "conditions that are mild, which do not limit a major life activity, as determined on a case-by-case basis." 2 Cal. Code Regs. § 11065(d)(9)(B). Excluded conditions "have little or no residual effects, such as the common cold; [or] seasonal or common influenza." *Id.*

Plaintiff's alleged disability is ongoing COVID-19 "brain fog," described in the complaint most clearly as a "neurologic deficit [that] manifested as fogginess/confusion/inability to concentrate." *See* Compl. ¶ 37; *see also id.* ¶¶ 29–36. Unsurprisingly, the case law on whether COVID-19-related residual conditions constitute a disability under FEHA is undeveloped. But there is no reason for such conditions to be exempt from the usual rule that they should be evaluated on a case-by-case basis. This Court thus agrees with the reasoning in *Roman v. Hertz Local Edition Corp.*, 2022 WL 1541865 (S.D. Cal. May 16, 2022). There, the court concluded that when COVID-19 "presents with temporary symptoms akin to the common cold or seasonal flu," it will "fall outside FEHA definition of ailments considered a disability." *Id.* at *5. On the other hand, "for some individuals COVID-19 can cause exceedingly severe, even deadly, symptoms with long durations that would easily qualify as a FEHA disability." *Id.* And what has been termed "long-haul COVID-19 . . . may well fall within FEHA's definition of a disability." *Id.* at *6. The EEOC's guidance on this issue is also helpful:[2]

> An individual diagnosed with COVID-19 who experiences ongoing but intermittent multiple-day headaches, dizziness, brain fog, and difficulty remembering or concentrating, which the employee's doctor attributes to the virus, is substantially limited in neurological and brain function, concentrating, and/or thinking, among other major life activities.[3]

---

[2] FEHA is modeled after the ADA, so courts have looked to decisions and regulations interpreting the ADA in applying FEHA. *See Roman*, 2022 WL 1541865, at *7–8 (reviewing EEOC guidance on the ADA in addressing whether COVID-19 constitutes a disability under FEHA). Significantly, however, FEHA's definition of disability is broader than the ADA's. *See Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1049 (C.D. Cal. 2005) (explaining that FEHA has a "limitation" standard rather than a "substantial limitation" standard).

[3] *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/wysk/what-you-should-know-about-COVID-19-and-ada-rehabilitation-act-and-other-eeo-laws/ (last updated July 12, 2022).

The EEOC adds that "limitations from COVID-19 do not necessarily have to last any particular length of time to be substantially limiting." *Id.*

The Court finds that Plaintiff has adequately alleged that she had a disability under FEHA at the relevant time. Here, Plaintiff claims she was suffering from long-term, residual effects of her initial COVID-19 infection. That her doctor "expressed safety concerns in Plaintiff returning to work" because her brain fog "could interfere with her ability to carry out her duties to protect passengers" plausibly alleges a limitation of a major life activity. *See* Compl. ¶ 30. Further, "concentrating" and "thinking" are major life activities as defined by California regulations. 2 Cal. Code Regs. § 11065(l)(1). And temporary conditions may be considered disabilities. *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1053 (C.D. Cal. 2005); *Zessi v. Ameripride Servs., Inc.*, No. 19-CV-03384-SI, 2019 WL 3779775, at *2 (N.D. Cal. Aug. 12, 2019) ("Whether a temporary condition is disabling must be determined on a case-by-case basis."). For now, Plaintiff has alleged the kind of severe, enduring symptoms that may qualify as a disability; whether she ultimately proves that her case of COVID-19 falls into that category remains to be seen. *See Brown v. Roanoke Rehab. & Healthcare Ctr.*, 586 F. Supp. 3d 1171, 1176–77 (M.D. Ala. 2022) (finding plaintiff adequately alleged a disability under the ADA based on a "severe case" of COVID-19, even if she "could ultimately lose the war" at summary judgment).

United argues, in part, that Plaintiff was not disabled at the time of her termination. *See* Dkt. No. 21 at 4. The complaint is somewhat ambiguous as to how long Plaintiff's symptoms continued, and presumably she no longer had safety concerns once she returned to work. But given that FEHA covers "[h]aving a record or history" of a disability as well as "being regarded as . . . having, or having had" a disability, the precise timing of when her symptoms ceased is not necessarily dispositive. *See* Cal. Gov't Code § 12926(m)(3); *Davis v. Vitamin World, Inc.*, No. CV 11-00367 ODW OPX, 2011 WL 5865614, at *5 (C.D. Cal. Nov. 21, 2011).

**2. Discriminatory Motive**

The Court also finds that Plaintiff's allegations are sufficient to raise a plausible inference of discriminatory motive based on disability. Plaintiff alleges that she was "summarily terminated" after she contracted disabling COVID-19 and had to take more than a month off of

7

work. *See* Compl. ¶ 36. That, in combination with allegations that her supervisor repeatedly insinuated—*before* Plaintiff did anything purportedly contrary to policy—that she was exaggerating her symptoms and should return to work, is enough to raise a plausible inference of discriminatory motive.

As the Ninth Circuit has noted, "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001). Thus, the "link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Id.* In *Diaz*, for example, an employee missed more work than allowed because of mental conditions that left him "temporarily totally disabled." 373 F. Supp. 2d at 1040–44. When the employee was cleared to return to work by his doctor, his employer first suspended, then terminated him for failing to satisfy attendance requirements. *Id.* at 1044. The court rejected as "circular" the employer's argument that the termination was because of the absences, not the disability. *Id.* at 1064. Here, taking Plaintiff's allegations as true (as the Court must), it is plausible that United terminated her because of her disability, whether it was specifically because of ongoing symptoms or taking more than a month off of work. At this stage, Plaintiff's theory does not need to be compelling, or even likely—it need only be plausible.

### ii. Failure to Accommodate & Engage in Interactive Process

FEHA makes it unlawful for an employer to "fail to make reasonable accommodation for the known physical . . . disability of an . . . employee" or to "fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." *Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 922 (9th Cir. 2017) (citing Cal. Gov't Code § 12940(m)(1), (n)).

To start, the allegations that United did not allow Plaintiff to "return to work sooner" cannot serve as the basis for her claims, because Plaintiff does not allege that a reasonable accommodation existed that would have allowed her to return to work while on medical leave. *See Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 980 (2008) (failure to

1    engage in the interactive process is unlawful "only if a reasonable accommodation existed").
2    Plaintiff's own allegations belie that notion: she states that "she was unable to perform [] her
3    essential job functions, including engaging in safety protocols in case of an emergency" until
4    December 1.  *See* Compl. ¶ 46.

5          That said, there are other allegations in the complaint that support Plaintiff's failure to
6    accommodate and failure to engage claims.  First, leaves of absence are considered a reasonable
7    accommodation, and "[h]olding a job open for a disabled employee who needs time to recuperate
8    or heal is in itself a form of reasonable accommodation and may be all that is required where it
9    appears likely that the employee will be able to return to an existing position at some time in the
10   foreseeable future."  *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 911 (N.D. Cal. 2015)
11   (quoting *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000)).  United argues that it did
12   just that by giving Plaintiff thirty-six days off work.  *See* Dkt. No. 17 at 24.  But if United gave
13   Plaintiff leave only to terminate her because of it on her return, that can no longer be called an
14   accommodation.  *See Alejandro*, 129 F. Supp. 3d at 911 ("Plaintiff alleges that Defendant did not
15   permit Plaintiff to return to work after his absence.  Plaintiff therefore alleges that Defendant
16   failed to make reasonable accommodation for his disability.").  Second, Plaintiff alleges that she
17   traveled to Florida to recuperate, restore her health, and give her body time to recover.  *See*
18   Compl. ¶¶ 36, 46–47, 83.  Taking Plaintiff's allegations as true, her allegation that Defendant
19   "summarily terminated her" is enough to infer that Defendant "failed to meet its duty to explore
20   further methods of accommodation before terminating [Plaintiff]."  *Humphrey*, 239 F.3d at 1137.
21   For example, once Defendant was aware that Plaintiff's travel was related to a disability, it could
22   have made a retroactive exception to its purported policy on travel during sick leave.

23         Whether Plaintiff's theory bears out is another question.  The Court is skeptical, for
24   example, that allowing Plaintiff to travel on the company's dime is an accommodation that would
25   be required by FEHA.  Further, any breakdown in the interactive process must be United's fault
26   for it to be liable for failure to engage.  *See Alejandro*, 129 F. Supp. 3d at 912.  But taking
27   Plaintiff's allegations as true and resolving inferences in her favor, she has sufficiently pled claims
28   for failure to accommodate and engage in the interactive process.

### iii. Retaliation

"[T]o establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005). Although inartfully pled, Plaintiff asserts that Defendant retaliated against her for requesting an accommodation for her disability, including time off. *See* Dkt. No. 17 at 12. Requesting an accommodation, regardless of whether the request is granted, is a protected activity. *See* Cal. Gov't Code § 12940(m)(2). For reasons already described, Plaintiff's allegations raise a plausible inference that her termination was causally connected to her leave. *Tipton v. Airport Terminal Servs., Inc.*, No. CV1809503ABJEMX, 2019 WL 4231235, at *9 (C.D. Cal. June 25, 2019) (finding plaintiff alleged enough facts to state a retaliation claim based on a termination for taking too much time off). Thus, Plaintiff has adequately alleged a retaliation claim.

### iv. Harassment

To prevail on a harassment claim under FEHA, a plaintiff must prove that she was subjected to harassment because of a protected characteristic and that the harassment was so severe that it created a hostile work environment. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999)). To rise to the level of harassment, the conduct must be "sufficiently severe or pervasive" so as to "alter the conditions of employment and create an abusive working environment." *Aguilar*, 21 Cal. 4th at 130. Harassment does not include personnel management duties such as "hiring and firing." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64–65 (1996). While "discrimination refers to bias in the exercise of official actions on behalf of the employer," "harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009).

Plaintiff's age and gender-based harassment claims fail for the same reasons described above: she does not allege any non-conclusory factual material to support them. For her disability-based harassment claim, Plaintiff fails to allege "sufficiently pervasive" conduct that

10

would rise to the level of harassment. "Harassment cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Quigley v. United Airlines, Inc.*, No. 3:21-CV-00538-WHO, 2021 WL 1176687, at *7 (N.D. Cal. Mar. 29, 2021) (quoting *Aguilar*, 21 Cal. 4th at 131). Plaintiff vaguely asserts that supervisors harassed her by treating her "in a rude and belittling manner," "repeatedly badgering [her] about her disability," and calling her "a liar and untrustworthy" because of her disability, presumably leading up to her termination. *See, e.g.*, Compl. ¶ 58. But substantively, Plaintiff points only to two phone calls in which Petani insinuated that Plaintiff was overstating her symptoms and should be at work. *Id.* ¶¶ 30, 33. Isolated incidents and stray remarks, unless "extremely serious," are insufficient. *See Ayala*, 263 F. Supp. 3d at 910–911.

The Court thus finds that plaintiff has not alleged harassment severe or pervasive enough to "alter the conditions of employment." *See id.* The Court **DISMISSES** Plaintiff's harassment claim as to all Defendants with leave to amend.

### B. Wrongful Termination, Failure to Investigate, & UCL Claims

The parties agree that Plaintiff's wrongful termination in violation of public policy, failure to investigate, and UCL claims are derivative of her FEHA claims. *See* Dkt. No. 9 at 25, 29; Dkt. No. 17 at 13; Dkt. No. 21 at 6. Because the Court has found that Plaintiff adequately alleged discrimination on the basis of disability, the wrongful termination, failure to investigate, and UCL claims survive on that basis as well. *See, e.g.*, *Alejandro*, 129 F. Supp. 3d at 915 ("Because the Court finds that Plaintiff has sufficiently pled a cause of action under FEHA, the Court denies Defendant's motion to dismiss the cause of action for wrongful termination.").

### C. Defamation

Defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) (citation omitted). Plaintiff's defamation claim is based on statements made in the course of termination, in her termination letter, and in her personnel file that she was dishonest, committed fraud, lacked professionalism, and was irresponsible. Compl.

¶ 99. Defendants argue that the claim is time-barred, that the allegations are inadequate, and that the alleged defamatory statements are privileged. *See* Dkt. No. 9 at 25–28; Dkt. No. 30 at 11–15.

Plaintiff's defamation claim fails because she has not identified any publication of an alleged defamatory statement made within the statute of limitations. Defamation causes of action accrue when a defamatory statement is published. *Shively v. Bozanich*, 31 Cal. 4th 1230, 1247 (2003). Other than the termination letter itself, Plaintiff identifies *no* publication of a defamatory statement to a third party. Plaintiff does not contest that the termination letter is dated January 12, 2021.[4] *See* Dkt. No. 9-2, Ex. B. Plaintiff filed her case in July 2022. Thus, putting aside the question of whether copying other employees on the letter counts as publication, *see* Dkt. No. 17 at 14, a claim based on publication of the letter itself is time-barred, as would be any "publications" leading up to Plaintiff's termination. Moreover, the Court agrees with Defendants that Plaintiff's allegations are too vague, as she does not explain who said what to whom.

Plaintiff asserts a "self-publishing" theory: she argues that "she has been forced to repeat these false accusations against her long after she was terminated." *See id.*; *see also* Compl. ¶ 100. Generally, a plaintiff "cannot manufacture a defamation cause of action by publishing the statement to third person; the publication must be done by the Defendants." *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1033 (E.D. Cal. 2015) (quoting *Live Oak Publishing Co. v. Cohagan*, 234 Cal. App. 3d 1277, 1284 (1991)). There is an exception if (1) the source of the statement is aware the plaintiff would be under a "strong compulsion" to disclose it to third parties; (2) it is reasonably foreseeable that plaintiff would disclose the statements, and (3) the plaintiff has *actually* published the substance to third parties. *Id.* at 1034. But Plaintiff has identified no instance of republishing an alleged defamatory statement, or offered facts to support a "strong compulsion" to disclose, such as the need to "explain away a negative job reference." *Davis v.*

---

[4] Defendant requests judicial notice of the termination letter and relevant provisions of the governing collective bargaining agreement. Dkt. No. 9-1. Plaintiff does not oppose the request. The Court **GRANTS** the request, since the documents are referenced in the complaint, are central to Plaintiff's claim, and their authenticity is not in question. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The remaining requests for judicial notice are **DENIED AS MOOT** because the Court did not consider the underlying documents in addressing these motions. *See* Dkt. Nos. 32, 35.

*Consol. Freightways*, 29 Cal. App. 4th 354, 373 (1994); *Fonseca v. Wal Mart Assocs., Inc.*, No. EDCV19821JGBKKX, 2019 WL 2903960, at *4–5 (C.D. Cal. July 5, 2019) (self-publishing theory potentially viable at motion to dismiss stage where prospective employers "expressly inquired" about prior termination).

Because any defamation claim based on publication of the termination letter is time-barred and it is unclear what, if any, post-termination publication Plaintiff relies on, the Court declines to reach Defendant's remaining arguments.[5] The Court **DISMISSES** Plaintiff's defamation claim with leave to amend.

### D. Preemption

Defendant also argues that the Railway Labor Act preempts Plaintiff's FEHA, wrongful termination, and UCL claims because they will require interpreting multiple collective bargaining agreement provisions. Dkt. No. 9 at 29–30.

The RLA only preempts a state law claim where it "arises entirely from or requires construction of a CBA." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 914 (9th Cir. 2018). The Ninth Circuit has articulated a two-part test to determine if a state law is preempted by the RLA. First, courts ask if a right is "grounded in a CBA" by asking whether the claim "seeks purely to vindicate a right or duty created by the CBA itself." *Id.* at 920–21. Second, if the right is *not* grounded in a CBA, courts ask "whether litigating the state law claim nonetheless requires interpretation of a CBA" such that it would "threaten[] the proper role of grievance and arbitration." *Id.* at 921. Importantly, "interpret" is construed narrowly: "it means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* (quotation omitted). At this step, "claims are only

---

[5] Defendant also argues that (1) the alleged defamatory statements constitute non-actionable opinion; (2) conditional or absolute privilege applies because the statements were made in the context of an employee relationship; and (3) the claim is preempted by the Railway Labor Act. *See* Dkt. No. 9 at 27–28; Dkt. No. 30 at 11–15. The Court notes that Cal. Civ. Code § 47(b) provides an absolute privilege for publications made in grievance procedures governed by a CBA, including "communications made during the proceeding and those made in order to prompt an investigation into a possible wrongdoing." *Rivera v. Nat'l R.R. Passenger Corp.*, No. C 99-04003 SI, 2004 WL 603587, at *6 (N.D. Cal. Mar. 22, 2004). Cal. Civ. Code § 47(c), in turn, provides a qualified privilege for statements between employees that are of "common interest," unless the plaintiff can show the statements were made with malice. *Id.*

13

1  preempted to the extent there is an active dispute over the meaning of contract terms." *Id.*
2  (quotation omitted).
3        Here, Plaintiff's claims "arise from FEHA . . . and do not seek to vindicate a right that is
4  purely created by the CBA." *Leaea v. United Airlines Inc.*, No. 18-CV-00749-SI, 2018 WL
5  3777566, at *7 (N.D. Cal. Aug. 9, 2018); *see also Saridakis v. United Airlines*, 166 F.3d 1272,
6  1276 (9th Cir. 1999) (finding FEHA claims were not preempted by the RLA). Despite
7  Defendants' insistence, Plaintiff's references to the just cause provisions of the CBA in her
8  complaint do not make the CBA the "central issue" in her case. *See* Dkt. No. 9 at 30. Rather, the
9  central issue is whether United discriminated against Plaintiff as defined by FEHA. State law
10 causes of action that are factually "parallel" to a grievable CBA claim are not automatically
11 preempted. *See Schurke*, 898 F.3d at 920. At the second step, Defendants argue that the Court
12 will need to interpret United's attendance and sick leave policies. But the Court sees no genuine
13 "active dispute" over a specific contract term. Courts frequently find that discrimination-based
14 claims are not preempted by the RLA even where a defendant's justification for termination is a
15 CBA attendance policy. *See Leaea*, 2018 WL 3777566, at *7; *Saridakis*, 166 F.3d at 1276
16 ("Although United may be able to introduce and rely upon the CBA and the last chance agreement
17 as part of its defense . . . that would not be enough to render the dispute . . . subject to the RLA's
18 dispute resolution mechanism."). The fact that CBA policies will play a role in Defendant's
19 ultimate defense is not enough to trigger preemption.
20       Thus, the Court finds Plaintiff's FEHA, wrongful termination, and UCL claims are not
21 preempted by the RLA.

**IV. CONCLUSION**

23       The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss at Dkt. No.
24 9. The Court **GRANTS** the motion to dismiss at Dkt. No. 30. The Court **DISMISSES** Plaintiff's
25 claims for gender and age-based discrimination, harassment, and defamation with leave to amend.
26 Plaintiff's claims for discrimination based on disability and any derivative claims may proceed.
27 Plaintiff may file any amended complaint within 21 days of the date of this order.

14

The Court further **SETS** a telephonic case management conference on May 2, 2023 at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD. The Court **DIRECTS** the parties to meet and confer and submit a joint case management statement by April 25, 2023. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated: 3/31/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

15